I'm Beverly Martin, and I'm delighted to be here this morning with Judge Jill Pryor and Judge Julie Carnes. Welcome to the Eleventh Circuit. I assume you all are familiar with our stoplight system, and I'm going to do my best to enforce it this morning, but without further ado, we'll just get underway, and I'll call the first case of G.M. Sign v. St. Paul Fire & Marine Insurance Company. Good morning. Good morning, Your Honors. It may please the Court. My name is Jeffrey Berman, and I'm here on behalf of G.M. Sign. With me in court today are my co-counsel, Anthony Lake, and David Oppenheim. This is the second time the parties in this case have been before this Court, and the first appeal resulted in this Court's reversal of a summary judgment granted by the District Court on behalf of St. Paul based on its incorrect attempt to impose a forfeiture of coverage. This Court reversed and remanded, and then on remand, the parties presented additional arguments to the District Court, and we're back here again after the District Court once again granted summary judgment for St. Paul, understandably but erroneously applying a decision of this Court that predates operative decisions of the Georgia Supreme Court, which I will endeavor to explain, should guide this Court's analysis and lead it once again to reverse the District Court. In sum, this case involves a circumstance where the insured had no intent to transmit faxes to unwilling recipients. That lack of intent and the nature of the claim at issue under the federal TCPA is essential to the coverage questions that are presented. Because MFG.com believed it was acting properly, had the consent of the recipients, and did not intend to injure them, it acted negligently. A deliberate act performed negligently is an accident if the result would have been different had the deliberate act been performed correctly. And that conclusion is entirely consistent with Georgia law as it has evolved since this And those decisions can be reconciled. The Georgia Supreme Court in Hathaway firmly jettisoned the absolutist proposition that had pervaded much of the case law, namely that unintended consequences of intentional acts cannot be an accident for purposes of insurance coverage. The Hathaway Court absolutely held that a deliberate act performed negligently is an accident if the effect is not the intended consequence. And in fact, the dissent in that case points out in stark terms that, at least in Justice Melton's view, Georgia law had been to the contrary prior to that decision, that Georgia law had been that an accident could not result from intentional behavior for purposes of coverage. Instead, as the dissent notes in Hathaway, the majority opinion stands for the proposition that coverage is available for unintended injury caused by intentional acts. Now the Taylor-Morrison decision... The injury here, the use of the machine and the ink, that was intended, correct? When you send a fax that you intend to send, you are going to occupy the machine and use the ink, etc. That's correct. So that is anticipated. That is correct as far as it goes. That's right. The reason why this is an interesting situation, actually, and I'll get into Taylor-Morrison in a moment, but the reason why that isn't dispositive of the question before this Court is because in the circumstance, had the sender operated under his belief been correct, that this was a willing recipient, there would be no damage. This is not a case where, like an auto accident, where if there's a crash, there's always compensable damage. Here, if you send a fax to a willing recipient, there is no damage. There is no harm. They got the fax that they were willing to receive. It's only because it was an unwilling recipient that there is actual cognizable damage, and that's because the TCPA says you can't do that. And Taylor-Morrison, I think, will help explain that, because Taylor-Morrison was the follow-up case from the Georgia Supreme Court, and it shed light on how this law has evolved in In that decision, the Court recognized where the premise of liability is one based exclusively on the existence of intent, such that the notion of proven liability of an accident is mutually exclusive, then the absolute rule should apply. And illustrating the point, the Court walked through the two different theories of relief in that case that all stem from an operative nucleus of facts, although the elements were different, and that is breach of warranty and fraud, both arising out of the same basic factual genesis. The Court first concluded that the fraud claim could not give rise to a potentially covered occurrence because intent is an element of that claim, and damages for fraud could not arise in the absence of intent. Or, in other words, fraud damages could not arise from an accident. On the other hand, the Court held that because the breach of warranty claim is one of strict liability and can be proven without showing intent, or in other words, warranty law imposes liability regardless of intent or culpability, the fact that the precipitating act was an unintended consequence of that act couldn't be an accident. While it's true that the decision arose in the context of a faulty workmanship fact pattern, there's nothing about that opinion that limits its import to that fact pattern or to that scenario, and that's why the later decision of Forks Timber, which the District Court relied on extensively, I think misread that case. Well, why couldn't we, could we not say that Hathaway is limited to faulty workmanship cases and that the rest of Georgia law indicates that intentional acts with unintended legal consequences, not factual consequences, unintended legal consequences don't cover an accident? Why can't we limit Hathaway to simply faulty workmanship type cases? I would respectfully suggest that Hathaway, as it is later developed in Taylor-Morrison, suggests that that's not the case here, that the Georgia Supreme Court made some fairly broad changes in the law on point, and that there's no, nothing in those cases that inherently says that they are limited to faulty workmanship context, that they actually can be and should be applied in other contexts. When you talk about a breach of warranty- Taylor-Morrison, the Taylor-Morrison was not a case like this case, though, correct? Well, Taylor-Morrison was a case that involved a claim under strict liability, and in that respect, it is absolutely like this case, because the TCPA claim is also a strict liability claim. You are liable under the TCPA in strict liability, regardless of intent, regardless of whether or not you sought to violate the act, whether or not you sought to do any harm. The mere act alone gives rise to the potential for liability, and that is the same as the breach of warranty claim in Taylor-Morrison. And that's why, when you look at- But doesn't Taylor-Morrison characterize Hathaway as a faulty workmanship case, kind of case? It does, but that doesn't mean that, in describing the factual genesis of Hathaway, the Court was saying that it only is important in that context. There are some fairly strong statements in that case, in both of those cases, that I think Georgia's Supreme Court has moved beyond the absolutist position and is not simply taking the position that we're going to carve out one small little area of the law and leave everything else alone. I don't see anything in those cases, and I respectfully suggest to the Court that there's nothing in those cases that suggests that that is, in fact, the way those courts should be read. And if you look at them in that context, if you consider it that the Court in Taylor-Morrison was creating this distinction between strict liability cases and cases that involve proof of intent, and if you walk through that case, and I did again last night, and I was again surprised at how starkly they did that, when you look at that, the other cases that we talk about, and were talked about even in this Court's earlier decisions, are actually fairly reconcilable. When you go back to Macron-Iron, which this Court looked at in Mindus-Meadow, the Court, which was pre-Hawthorne and pre-Taylor-Morrison, there the Court was addressing claims arising out of, we'll call it, unintended cutting up of scrap, of rail cars for scrap, under a false belief. And the plaintiff sought damages under three theories, racketeering, fraud, and conversion. And although the Court didn't have the benefit in that case of Taylor-Morrison's analysis, because it came much later, it actually reached fundamentally the same result that would be required under the analysis that the Court used in Taylor-Morrison. Because each theory of liability would require proof of intent, none could give rise to accidental damages. Fraud requires intent, racketeering requires intent, and under Georgia law, conversion requires intent. And the same analysis applies to the more recent decision of Forks-Timber, which came down after Hathaway but before Taylor-Morrison. Forks-River, as I mentioned, was relied upon extensively by the District Court, but a close reading shows that it is also distinguishable from this case and fully consistent with Taylor-Morrison. In Forks-Timber, the coverage dispute arose out of alleged improper cutting of timber by a defendant who mistakenly believed he had the right to do so. The underlying complaint sought damages for conversion, and only conversion, and the Court highlighted that fact, and that conversion under Georgia law requires proof of intent. It's not, by the way, consistent among other states. For example, Illinois law allows proof of conversion negligently. But here in Georgia, the courts have made very clear that that is inherently an intentional tort. Because conversion cannot be performed negligently, the consequential damages couldn't result from an accident. Now, the Court in Forks-Timber did not have the benefit of Taylor-Morrison and spent a lot of time on the notion that erroneous beliefs cannot form the basis of an accident in order to reconcile with Hathaway and Macron-Iron, but the proper analysis is established by the later Supreme Court decision in Taylor-Morrison. Now, I'm running out of time, but I would be remiss if I didn't touch on the fact that the same analysis applies to this Court's decision in Mendes-Metals, which was substantially based on Macron-Iron and long predated Taylor-Morrison. In that case as well, the claim was for conversion under Georgia law. And because conversion can't be proven without proving intent, the analysis that was established in Taylor-Morrison would guide the Court if it looked at it today to reach the same result for a different reason, but nevertheless, it is consistent with Georgia law as it has evolved. Here, we have a strict liability claim like the warranty claim in Taylor-Morrison. The TCPA claim here can be and is proven without proving intent. And that's why Taylor-Morrison teaches us that under Georgia law, as it has evolved, this case is different from the conversion claims, the trespass claims, the fraud claims that are inherently intentional claims and could never be a negligent act or give rise to negligence damages or accidental damages. The resulting damages here, like those for breach of warranty in Taylor-Morrison, resulted from an accident under the coverage terms of the policy, ultimately because MFG believed that it had the consent of the recipients and did not intend to injure them, and its liability arises in strict liability, the claims are a covered event and not excluded, and St. Paul has a duty to indemnify. This court should reverse the district court again and enter judgment in favor of GM Sine in the class. And with three seconds to go, if the court has no further questions, I will await my rebuttal time. Thank you. Thank you. May it please the court, counsel, my name is Chuck Spivak, I represent the St. Paul Fire Marine Insurance Company. Your honors, the nature of this case is one that requires precision in the language that's used, and that's the fatal flaw in the appellant's case, because the appellant's argument is not precise in terms of the argument that it makes before the court. It flip-flops between the question of intent to cause the property damage, which is the prerequisite for even considering whether it was done intentionally or not, but the consumption of the recipient's consumables and time, paper, ink, and time. But then when it suits their purposes, they flip the discussion from talking about intent to cause the property damage, which is the trigger for coverage, versus intent to suffer the legal consequences. And Georgia law very clearly, even after the Hathaway decision, still looks at intent to cause the property damage, not whether it intended the legal consequences. And Judge Ross' order granting St. Paul summary judgment in this case recognized that fatal flaw in the appellant's argument, is that if you are going to try to justify a $22.5 million confessed judgment as being compensation for the compensation of some paper, ink, and a person's time, so as to try to bring the case within the insurance company's coverage for property damage, you can't then shift gears and say there's coverage for that expected property damage because you did not intend to be liable for it. The insurance policy says that the property damage, that must be caused by an accident and not the insurer's liability for it. And the Georgia courts, including this court, interpreted that language as saying precisely that. Now, we know that this court in the Mentis Metals versus Transportation Insurance Company case clearly held that when talking about damages caused by an accident, in Georgia unintentional conduct premised on erroneous information or beliefs is not an accident. And that rule has not been changed by the subsequent decisions of the Georgia appellate courts, including the Supreme Court in Hathaway. And this is best explained not by me, but by the Southern District's opinion in Capital City versus Forks Timber. As Judge Woods eloquently noted in the Capital City case, Hathaway does not define an accident as an intentional conduct causing the intended physical consequences, but which results in unintended legal consequences. Perhaps Hathaway opens the door to coverage for a timber company that negligently cuts down a tree, causing the tree to fall and crush an automobile on surrounding property. But the case does not, however, support coverage for the intentional harvesting of timber the harvester mistakenly believes to be free from legal encumbrances. And that's the precision in language that must be applied to the court's analysis here. Because if the insuring a grant that is going to be met is the claim that this case presents a claim for property damage, with the property damage being attempted to be defined as the consumption of paper, ink, and the recipient's time, and if that property damage is required by the policy to be caused by an event, which is defined as an accident, then the inquiry has to be on whether the property damage, the consumption of paper, ink, and time, was accidental, not on whether the insured expected the legal consequences of its act. And in this case, Judge Pryor, as your question indicates, it is absolutely the natural and expected consequence of someone sending a facsimile, pushing that send button, that on the other end of the line that person's ink is going to be consumed, their paper is going to be consumed, and they're going to have to spend a modicum of time looking at what the machine spits out. As was concluded by the, I'm sorry, as was concluded by Judge Wood in her opinion, talking about the Hathaway case, Georgia law does not view erroneous legal beliefs or unintended legal consequences as the sort of unintended consequences necessary to constitute an accident. So using as the factual examples the cases which have been decided by the court, both before, during, and after Hathaway, the natural and expected consequence of cutting up railroad cars and using them for scrap is that they are no longer available to their rightful owner, regardless of whether you believed you had the right to do it or not. The natural and expected consequence of cutting down a tree is that the tree is gone, regardless of whether you understood that you had the right to do it or whether that tree was encumbered. And in this case, the natural and expected consequence of sending someone a facsimile is that it will consume the recipient's ink and the recipient's paper. But the natural and expected consequence of faulty workmanship is not necessarily that surrounding property will be damaged. The work itself, yes, but neighboring property, not necessarily, no. And Judge Carnes, this goes to your question. There clearly is a distinction in Georgia law between faulty workmanship cases and all the rest. Because for example, the situations we're talking about here, if the insured installs a four-inch pipe as opposed to a six-inch pipe, as called for in the plans, which is the fact scenario of Hathaway, there's no question but that it failed to follow the plans. And an insurance policy isn't going to pay to put in a six-inch pipe when it was supposed to, when it put in a four-inch pipe instead. But if putting in that four-inch pipe results in some sort of leak or explosion or whatever that causes damage to the neighboring property, then what the court in Hathaway says is that damage to the neighboring property is not expected or intended from the standpoint of the insured. That is accidental. But if the issue in Hathaway was, do we have to put in a six-inch pipe, does the insurance company have to pay the six-inch pipe, the court would clearly say no. And that same rationale as indicated by the Georgia District Court following Hathaway applies to this circumstance. If the issue before the court is whether the property damage, the damage was accidental, then putting in the four-inch pipe clearly was not accidental. In this case, however, the damage is to the recipient's paper, ink, and toner. And that clearly was not accidental. It was no more accidental than it was the loss of the railroad cars to the rightful owner when they were cut up and sold as scrap. And it is no more accidental than the loss of the timber that was cut down when someone held a lien on it. Opposing counsel is very smitten with Taylor Morrison. Would you like to address that case? Yeah, Your Honor, I think, again, Taylor Morrison is distinguishable because there is not the allegation in Taylor Morrison that there is in this case or the other cases conceived by the court of actual intentional conduct by the insured. So again, I think that that case is distinguishable from this case because it fits more within the idea being that you can do an act that you intend to do, but if it results in damage that is purely fortuitous, we are not going to announce a blanket rule in Georgia saying that any sort of intentional act will result in complete loss of fortuitous damage. It's the situation that we talked about in the Hathaway case. They intentionally didn't follow the plans or they clearly didn't follow the plans, but they may never have intended that a four-inch pipe as opposed to a six-inch pipe would have resulted in damage to someone else. Whereas when you push send on the fax machine, there's absolutely no question you're intending that the other person's consumables are going to be consumed. And if that's what the basis for their hook for getting coverage to start with is going to be, look, there's property damage in this case because you damaged someone else's property as opposed to arguing that really what the liability here for is for violation of a statute that imposes a fixed amount of a fine as a result, $500 per fax or up to $1,500 per fax. If you're going to try to square that peg into the round hole by arguing what this is really a property damage case, then you have to focus on what the property damage is and whether there's any question that that property damage was fortuitous or not. Your Honor, I think there's an instructive case that wasn't in our brief because it was brought to our attention as a result of arguments that were made in the reply brief that talk about this circumstance in Georgia. What's the state of law in Georgia following the decision in the Hathaway case? And interestingly, it comes from a very lengthy discussion by a federal district court in Maryland, the United States District Court in Maryland, the IFCO Systems versus North America versus American Home Assurance Company case. It can be found at 797 FedSup 660. Now that case involved the intentional conversion of money and goods, but it required an analysis of where the law was in Georgia, and the court concluded that accidents have accidental causes, which are defined as unintentional acts. Georgia law distinguishes between intentional acts that cause accidents and thus unintentional injuries, and intentional acts that may nevertheless also cause unintentional injuries. Only the former give rise to accidents. Intentional acts cannot do so. Thus, the inquiry must focus on the intention behind the act that caused the unexpected event. So, in this case, what they want you to focus on is that we didn't expect to violate the law, but Georgia law requires you to focus on the act, and in this case, the act was clearly intentional. Pressing send on a fax machine results in the natural and expected consequence that paper, toner, and time is going to be consumed on the other end, and if you're going to try to characterize this case for insurance purposes as a case seeking damage for paper, toner, and time, the loss of that paper, the loss of that toner, the loss of that time was clearly not accidental. It is the natural and intended consequence of pushing send on a fax machine, and your The cases cited by the appellants basically focus on the laws of three states, Missouri, Illinois, and North Carolina, but the Third Circuit, the Fourth Circuit, applying New Jersey law, Virginia law, Pennsylvania law, courts of appeals involving California law, courts of appeals involving Arizona law, Ohio law, and Texas law all concur. As the Third Circuit said in Brother v. St. Paul, involving the same policy language, the consumption of a fax recipient's toner and paper is the intended consequence of the insurer's intentional act in sending the fax, and is therefore not accidental within the meaning of the policy. And most recently, as the Ohio Court of Appeals said in the acuity case, while appellants may not have intended to violate the TCPA, the act, they did intend to send the faxes and knew that sending them would use the recipient's paper, toner, and time. Now, Your Honors, there is also in effect here a separate exclusion, an exclusion for property damage expected or intended by the standpoint of the insurer, which is not argued or addressed in appellant's briefs. Okay? The court didn't reach that, did she? The court didn't need to reach it, Your Honor. If interpreted correctly, the effect of the insuring a grant requiring the property damage be caused by an accident is essentially the same as the exclusion saying that we will not provide coverage for bodily injury or property damage that's expected or intended from the standpoint of the insurer. But if this court were to disagree with Judge Ross and adopt the appellant's reasoning and say that the accident requirement of the insuring agreement somehow refers to the legal consequences of the act and not to the property damage itself, then the policy's exclusion still requires it be the property damage that not be expected or intended. But that's just for post-2005, post-2005 it claims, correct? No, Your Honor. That exclusion is contained in every policy. The post-2005 policy contains a specific exclusion that talks about unsolicited communications.  That's correct, Your Honor. Yep. Finally, Your Honor, if this court were to disagree with Judge Ross, the result would not be his appellant say or suggest that St. Paul is stopped from contesting the reasonableness of the $22.5 million judgment for paper toner and loss of time or any other issues with regard to the entry of that judgment. This estoppel rule is an Illinois rule not based upon an Illinois statute. It's a common law consequence of a breach of contract in Illinois. In this case, we're dealing with a Georgia contract being litigated in the Georgia court and Georgia law clearly does not allow for the result of estoppel as argued by the appellant here. As this court noted in Briscoe v. Georgia Sprinkler, the choice of law rule followed by the Georgia courts is that the application of another jurisdiction's laws is limited to statutes and decisions construing those statutes and if there's not a statute involved, Georgia courts are going to apply the common laws developed in Georgia. If you were to disagree with Judge Ross's decision at the court below, Georgia law would allow us to litigate a number of issues that have not yet been litigated, including whether $22.5 million is in fact reasonable compensation for the loss of some paper and ink, whether coverage was excluded under the 2005 to 2009 policies on the basis of the specific exclusion Judge Carnes we were just talking about. And if that exclusion doesn't apply, we'd be allowed to litigate whether its lack of applicability would only be in its first year of coverage or in the first 30 days of the first year of coverage as set forth by the Georgia statutes. But I think all of these issues, I bring them up only because they are raised in the reply brief. I don't think you have to reach them at all. Georgia law is clear. This case is excluded because this damage was not accidental. Thank you. Thank you. Thank you for your indulgence in allowing me to do a rebuttal argument. I'll try to be brief and be pointed in my responses. There is no property damage without the absence of consent and that is a distinction that when he talks about precision, that's not a legal belief, that's a factual belief. And when counsel talks about the fact that we can't look at the legal effect. There is property damage. The ink's gone, the paper's gone, it's just that the person who lost the ink and the paper, it's okay with them, they agreed to it, correct? That's correct. And therefore there's no claim. There's no cognizable cause of action. Oh, legal claim, but there's property damage. No, there's no property damage. There's consumption of those goods, but there's no property damage as defined by the policy or the law. If you've agreed to allow someone to use it, then there's no damage. It's gone. The paper's gone. But you haven't been damaged. It's been consumed, but you haven't been damaged. And when counsel talks about legal consequences, again, he wants us to focus on precise wording. This policy doesn't cover property damage. It covers sums that the insured becomes legally obligated to pay because of property damage. And there is a distinction there. So when he talks about, oh, $21 million, gosh, what a shame, you know, there's only a nickel's worth of property damage. That's not the question that's presented under this policy. The language of this policy requires them to respond to the legal obligation that arises as a result of any property damage. Here, the property damage resulted because these faxes were sent to people who didn't wish to receive them. And that was a misplaced belief. It wasn't negligent. It was an accident. But that doesn't necessarily mean that it somehow falls outside the coverage of the policy simply because it's a legal consequence. The fact is, the policy covers legal consequences in, wow, that two minutes went by very quickly. I'll stand on my briefs. Thank you very much. Thank you. We appreciate the argument.  So we'll now move on to the next item.